**Judith A. HOST, Respondent,**

v.

**Harold P. HOST, et al., Defendants,**

**Stearns County Welfare Board, Stearns County, Appellant.**

**No. C3–92–1665.**

Court of Appeals of Minnesota.

March 16, 1993.

**618**

Kevin L. Holden, St. Cloud, for respondent.

John R. Koch, St. Cloud, for appellant.

Considered and decided by HUSPENI, P.J., and RANDALL and PETERSON, JJ.

## OPINION

RANDALL, Judge.

Respondent Judith A. Host obtained a lien against her former spouse's interest in their homestead securing support obligations. The dissolution decree, setting out Harold Host's obligations, was recorded in 1984. Appellant Stearns County provided assistance to respondent and her children, obtained judgment liens against Harold for failure to pay support, and recorded those liens in 1986 and 1987. The trial court determined respondent's lien had priority over appellant's liens. We affirm.

## FACTS

On July 14, 1983, respondent applied for AFDC benefits from appellant. As part of her application, she completed an assignment of support form which assigned her right of support from her husband Harold Host to appellant. From July 1983 through June 1988, she received a total of $26,924 in AFDC benefits from appellant.

On March 20, 1984 respondent obtained a default decree dissolving her marriage to Harold Host. Appellant did not intercede/intervene in that action. The dissolution decree gave the homestead to the parties as tenants in common, and gave re-spondent the homestead until July 1, 1991. Harold Host was required to pay respondent child support, spousal maintenance, and part of the mortgage, real estate tax, and homeowner's insurance. In addition, the decree gave respondent "a lien on [Harold Host's] ownership interest in the homestead to secure payment of each and every financial obligation of [Harold Host] contained in this order." This lien was recorded on March 28, 1984. At that time, respondent was receiving assistance from appellant.

Before 1987, Harold Host did not make any child support or maintenance payments to appellant for reimbursement of benefits paid to respondent. Appellant obtained judgments against him for $16,243 on August 18, 1986, and $3496 on March 31, 1987. Those judgments were docketed August 18, 1986, and June 2, 1987. Between 1984 and 1990, sixteen other judgments or liens were docketed against Harold Host. In 1991, respondent brought a collection and foreclosure action against Harold Host. Respondent also named the other lien holders as defendants, including appellant, the Internal Revenue Service, the Minnesota Department of Revenue, and others. Respondent sought to determine the amount, validity, and priority of the liens. Only appellant and the Internal Revenue Service answered. The IRS later withdrew its answer by stipulation.

The case was submitted for a court trial upon stipulated facts. On August 6, 1992, the trial court awarded respondent a $24,-356.39 judgment against Harold Host. The judgment included $12,000 in spousal maintenance, $8746 in child support, $2710 in mortgage payments, $196.75 in homeowner's insurance, and $713.64 in property taxes. This judgment did not include child support for the time respondent was receiving benefits from appellant. The trial court found respondent's lien had priority over appellant's liens. This appeal followed.

## ISSUE

Did the trial court err by finding respondent's lien, recorded in 1984, had priority

over appellant's judgment liens recorded in 1986 and 1987?

## ANALYSIS

 When a case is decided upon stipulated facts, this court must determine whether the trial court erred in its application of the law. *Fingerhut Corp. v. Suburban Nat'l Bank*, 460 N.W.2d 63, 65 (Minn.App.1990) (citing *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn. 1989)). This court need not defer to the trial court's decision on a question of law. *A.J. Chromy Constr. Co. v. Commercial Mech. Servs., Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

 A lien is a hold or claim upon the property of another as security for a debt. *Boline v. Doty*, 345 N.W.2d 285, 288 (Minn. App.1984) (citing *In re Estate of Eggert*, 245 Minn. 401, 72 N.W.2d 360 (1955)). Generally, the rule applied to determine the priority of liens is "first in time is first in right." *Gould v. City of St. Paul*, 120 Minn. 172, 176, 139 N.W. 293, 294 (1913). Respondent's lien was recorded on March 28, 1984; appellant's liens were recorded in 1986 and 1987.[1]

 Appellant argues the first in time rule is only determinative of lien priority if the lien has become "choate," and that respondent's lien was not choate. Appellant cites federal law in support of its position.

> The federal rule is that liens are "perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established."

*United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 89, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963) (quoting *United States v. City of New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954)). In a case involving a federal tax lien versus a state lien, the state lien is not given priority over a recorded federal tax lien unless the state lien is attached to the property and is choate. *Id.* at 88, 83 S.Ct. at 1655.

 Appellant argues respondent's lien was not choate because the amount of the lien was unknown in 1984, and was not choate until respondent received the $24,-356.39 judgment on August 6, 1992. First of all, this case involves a comparison of two state liens, not a federal lien versus a state lien. Secondly, Minnesota *does not* require the amount of an otherwise properly recorded lien to be stated exactly in dollars and cents for the lien to have priority over subsequently recorded liens.

 Appellant notes that inchoate state liens have been viewed as "merely a *lis pendens* notice that a right to perfect a lien exists." *United States v. Security Trust & Sav. Bank*, 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950). Again, appellant cites federal law. However, in Minnesota, a lis pendens notice involving a claim of uncertain amount *has been enforced* over a mortgage. *Fingerhut*, 460 N.W.2d at 66. The purpose of a notice of lis pendens is to warn potential purchasers that the property is in litigation which affects title to the property. *Nelson v. Nelson*, 415 N.W.2d 694, 698 (Minn.App.1987).

In the *Fingerhut* case, a bank agreed to give a customer a mortgage on registered (Torrens) property. Three days later, the customer's employer sued the customer, claiming the customer bought the mortgaged property with funds defrauded from the employer and that the property was held in constructive trust for the employer. The next day, a notice of lis pendens was filed, and the customer received the mortgage proceeds. A few days later the mortgage was filed. Over a year later, the employer was found to have constructive trust of the property because the court could trace $141,000 of the fraudulently obtained funds from the customer to the property. *Fingerhut*, 460 N.W.2d at 64–

---

1. The parties do not address Minn.Stat. § 548.-091, subd. 1a (1990) (unpaid support payment is a judgment by operation of law on the date due), therefore we do not address the statute in our analysis. Respondent's lien was recorded on March 28, 1984, and the effective date of Minn.Stat. § 548.091 was April 25, 1984. 1984 Minn.Laws ch. 547, § 28. The statute's applicability, if any, need not be addressed and is not.

65. The court found that the *first registered interest*, the notice of lis pendens, had priority over the mortgage. *Id.*, 460 N.W.2d at 66–68. The fact that the amount of the claim was not certain since it had yet to be litigated was not the issue.

 Minnesota grants priority to liens and notices which are recorded, even if the amount is unknown at the time of recording. For example, prior to establishing an attorney's lien, a notice of attorney's lien must be filed. Minn.Stat. § 481.13(4) (1990). The lien is effective against third parties from the time the notice is filed. Minn.Stat. § 481.13(1) (1990); *Axel Newman Heating & Plumbing Co. v. Sauers*, 234 Minn. 140, 144, 47 N.W.2d 769, 771 (1951). In Minnesota, a recorded lien need not be fixed in dollars and cents to have priority over subsequently recorded liens. The trial court properly found respondent's 1984 lien had priority over appellant's claims.

Appellant also argues the lien was granted under Minn.Stat. § 518.57, subd. 1 (1990), which provides for a lien to secure child support, and therefore the lien could not cover maintenance or the other payment obligations involving the house such as mortgage, tax, and insurance payments. We disagree. Minn.Stat. § 518.64, subd. 2(d) (1990) provides in part:

> The court may impose a lien or charge on the divided property at any time while the property, or subsequently acquired property, is owned by the parties or either of them, *for the payment of maintenance or support money * * *.*

This provision is in the modification statute, but states that a court can impose a lien for the payment of maintenance *or* child support.

Further, this court has found that judgment language regarding liens which accommodate occupancy of the homestead by minor children is in the nature of child support. *See Saabye v. Saabye*, 373 N.W.2d 386, 387 (Minn.App.1985) (citing *Thomas v. Thomas*, 356 N.W.2d 76, 78 (Minn.App.1984)). A lien may operate to encourage the continued occupancy of the homestead by the parties' minor children and make it security for the payment of child support. *Thomas*, 356 N.W.2d at 79 (citing *Kerr v. Kerr*, 309 Minn. 124, 243 N.W.2d 313 (1976)).

The decree indicates respondent was given exclusive possession of the homestead until the summer of 1991, when the youngest child was to turn 18 years old, or for as long as another handicapped child was living with respondent since the homestead was handicap accessible. The trial court found

> [t]he lien given to [respondent] was primarily given to secure her ability to maintain a home for herself and the minor children and to secure the payment of child support and maintenance.

The decree accommodates occupancy of the house by the minor children, and is in the nature of child support. *See Thomas*, 356 N.W.2d at 79. The payment obligations regarding the house, such as mortgage, tax, and homeowner's insurance payments were also properly secured by the lien.

## DECISION

Respondent's 1984 lien against her former spouse's interest in their homestead securing child support, had priority over appellant's judgment liens recorded in 1986 and 1987.

Affirmed.